Good morning. May it please the Court, I am Saul Huerta from Mr. Leon-Paz. On this appeal, the only issue before the Court is whether or not Mr. Leon-Paz was prejudiced by the fact that the immigration court back in 1997, when it ordered Mr. Leon-Paz's removal, did not give him an opportunity to apply for relief under 212C. I have a question which absolutely does not relate to the merits. How is it that the public defender's office is engaged in the representation of someone in an immigration proceeding? Your Honor, this is a criminal matter. The deportation is being used in a 326 prosecution. Okay. You've answered the question. And, Your Honor, there are basically three reasons that the district court decided not to follow the, I guess, the position of our immigration expert. The three errors that the district court found with our expert were, first, that Mr. Sultan, the expert, did not – excuse me – that he ignored the standard that was to be used. In fact, Mr. Sultan filed a follow-up affidavit, a second affidavit to his first one, where he stated that he did, in fact, know that the standard that would probably apply in Mr. Leon-Paz's case was a higher standard that is normally used in 212C cases, and that is based on his prior criminal history. And Mr. Sultan, I would suggest to the Court, took that into account. And one of the ways that you can tell that is if you look at his affidavit, you'll notice that when he compares Mr. Leon-Paz's case to decide whether or not he had relief available or whether he had a possible case for relief under U.S. v. Arrieta, Mr. Sultan compares Mr. Leon-Paz to three aliens who he's represented. He doesn't give names, but he gives facts. Those aliens had offenses that – well, two of them, at least, had offenses that are more egregious than Mr. Leon-Paz. And the third one was someone who had lots of arresting convictions for lots of things, and I think that would be more comparable to Mr. Leon-Paz's case. And so I think for that reason, Mr. Sultan, the expert, when reviewing this information, had the proper information, the proper standard in arriving at his reasoned opinion as an immigration expert. And I'll go into those aliens in a little bit. The second issue is district court states that we have no record proving the work history of Mr. Leon-Paz. Now, the court is, in fact, wrong in that because under 8 U.S.C. 1160, little A, big B, for Mr. Leon-Paz to have been able to get documents, he got documents for something called seasonal agricultural worker program. He had to have worked in the U.S., and that was presented to the court. The district court obviously is not as well-versed in immigration law as, say, an immigration judge would be. But we do have some basis that shows that he did, that Mr. Leon-Paz, in fact, did work in the U.S., and we do have verification, again, as I said, under 8 U.S.C. 1160. That being said, we don't have any other verification except for the information that was given when the pre-sentence report was prepared in this case. That was because the first that we heard that any verification was required at this point by the court was when the order came out denying the motion to dismiss. And so for that reason, we did not have any further verification except for what is in the statute. And the last thing that the district court looked at and said was that Mr. Sultan, the expert, failed to take into account Mr. Leon-Paz's criminal history. That is a blanket statement that doesn't take into account what the affidavit says. The affidavit clearly states that Mr. Leon-Paz looked at the immigration file of Mr. Leon-Paz. Now, why is that important? That is important because the immigration file that Mr. Sultan looked at to arrive at his decision is exactly what the immigration judge would have looked at in 1997 in deciding whether or not to grant Mr. Leon-Paz relief. When we see these cases in the immigration context, normally it's an individual with one or more U.S. citizen children, perhaps even a U.S. citizen or LPR spouse, parents or grandparents, health issues of family members, that sort of thing. And none of these seem to be present with respect to this individual. As of 1997, he did have siblings in the U.S. He wasn't very close to them as far as Mr. Sultan could tell. But I guess there are two points to this. One is I am not at this point in time talking about whether or not he was more likely than not to be granted relief or whether there was an abuse of discretion by the BIA in not granting relief. The question under Arrieta and Arce Hernandez is, was there a plausible case for relief? And I think the court is correct that in the majority of cases there are more family ties than in this case. That being said, as I said, the three aliens that Mr. Sultan looked at to decide whether or not Mr. Leon-Paz had a plausible case for relief, one of them had no U.S. family members and had a conviction for child molestation, something obviously a lot more egregious than Mr. Excuse me, than Mr. Leon-Paz's offenses, none of which are offenses against children or offenses against persons. Do you think the district court applied the proper standard, which is whether there's a plausible claim? Your Honor, I don't believe the court looked at it that way. I think the court decided more or less that this was a person that the court may not have granted, probably would not have granted relief to, and so used a different standard, a basically more likely than not standard, which I don't think is proper because the government has more or less lost the ability to do that more likely than not standard by not giving the proper hearing back in 1997. They violated Mr. Leon-Paz's due process back then, and the law clearly states that all he needs to show right now is a plausible case for relief, not a more likely than not standard, which is what I felt the district court was using at the time. Besides the alien that I just mentioned, the other two aliens that Mr. Sultan, the expert, looked at, one committed perjury during his hearing and had a long history of arrests and convictions, including multiple DUIs, aggravated DUI, possession of marijuana and paraphernalia, false information, and solicitation to commit burglary and larceny. Again, no dependent family members in that case. And another one had run a continuing criminal enterprise. He was convicted of that, received a 10-year sentence, and again, he was granted 212C relief. So based on Mr. Sultan's own knowledge, his immigration expertise over 10 years, working not only as a practitioner but also for the immigration courts, I think logic dictates that if these folks, these aliens who have a 10-year sentence, another one who molested a child, if these people were able to get 212C relief, is it possible or plausible that Mr. Leon Paz could have been granted 212C relief? And I think the answer is clearly yes. Roberts. Does the expert indicate when these examples that he used – I know he didn't use names, but when that relief was granted? Your Honor, I know Mr. Sultan was a graduate in 1993 from law school, and he then clerked for a year or two, I believe it was one year, for the immigration courts. So the grants would have had to have been between 1994, 1995 to 2003 when – excuse me, 2004 when this was written. Specifically, do we know whether they were pre or post John Ashcroft? No, we do not, Your Honor. Okay.    We'll hear from the government at this time. Thank you, Your Honor. Good morning. May it please the Court. My name is Lisa Campagno, and I'm representing the United States in this matter. I'd first like to quickly go back to Judge Fletcher's question. If you look at the excerpt of record at pages 59 to 60, the district court clearly applied the plausible ground standard in this case. The Court stated that factor, that that was the correct standard of review for the purposes of this particular issue, and then the Court also went on to state that in this case where the defendant has a background of a serious criminal history, the heightened standard of outstanding or unusual equities should be applied, as the Ninth Circuit has recognized in the Gonzalez-Valerio case. An applicant for 212C will not have a plausible ground for relief if he has serious and established outstanding or unusual equities at the time he would apply for his 212C relief. If the standard were, is it likely that this individual would be denied relief, it seems to me this case would be a lot easier. But that's not the standard, is it? No, Your Honor. The standard is plausible, but at the same time ---- You know, that's in the order of quantum of proof that someone has to meet. That's just a tick above fog the mirror, isn't it? I suppose you could see it that way, Your Honor, yes. But this Court has also recognized that the plausible standard can be interpreted as whether or not the defendant has established enough concrete evidence to show that the outcome of his removal proceeding would have been affected. So whether you use the word plausible or whether you use the word prejudice insofar as the defendant shows that the outcome would have been affected, that's sort of what ---- that's sort of the standard that we're using here in this situation. Does that sort of give a little bit more background for you, Your Honor? Yes. But, you know, the problem, it seems to me, the government has here is that standard. You don't have to say it's likely he would have received relief or possible that he would receive relief. It's a little bit akin to the standard for granting a certificate of appealability. Is it a colorable claim? Is it ---- does it pass the laugh test, so to speak? Well, we submit that in your case ---- in this case it does not, Your Honor, because for purposes of 212c relief, in a case such as this where a defendant has a serious criminal history, he has to show outstanding or unusual equities existed at the time of his removal proceeding. Otherwise, he simply will not be considered for relief in the exercise of discretion. And in spite of the expert's affidavit in this case, the district court correctly found that there simply were no significant equities in 1997. Did the government offer contrary expert evidence? No, Your Honor. We did not. You didn't bring in an immigration practitioner or a former immigration judge or anything like that? No, Your Honor. No, Your Honor, and I don't believe that that's necessary in this case, because although the defendant is relying on the expert testimony and he also mentioned in his brief some statistical information, that's simply not the analysis here. The analysis is, one, was the defendant statutorily eligible in 1997, and in this case he was, and two, did he have some sort of outstanding or unusual equities in order to pass that sort of first blush test? And he did not have those equities in 1997. The defendant, Mr. Werther mentioned the issues of these three cases relied on by the expert. However, those cases are completely out of context. We don't have enough facts in those cases. We don't know the length of residence for those particular aliens. We don't know how old the convictions were. We don't know what other convictions they had in addition to those. There's simply not enough information provided by the expert from the defendant in order to make some sort of substantive comparison in this case. Instead, we need to – yes, Your Honor. Those cases seem to show persons with worse records being granted 212C relief, so we certainly need – don't need to look for more convictions or more record for those cases. The cases presented by the expert, Your Honor? Yes. Again, but we don't know, because this is a balancing test, we need to have everything put into perspective. It may seem that they had worse criminal histories, but we don't know their length of residence. We don't know what their significant family ties were. We don't know what kind of employment they had. Those individuals could have entered at the age of 1 and may have only spoken English and may not have had family in other countries. Those are all factors that a court takes into consideration to determine that – to determine the unusual or outstanding equity part of this analysis. Did the government ask the defense expert to reveal, even under seal, the case names, case numbers, et cetera, so the government could examine these examples? No, Your Honor. And again, I don't believe that was necessary in this case, because to determine whether or not someone is eligible or even has a plausible ground for 212C relief, it's really a fact-intensive analysis on a case-by-case basis. To try and sort of compare one person to another is almost an oranges-and-apples analysis. We need to simply look at what kind of equities did this person have in 1997, and at first blush, would that have been enough to sustain a showing of these outstanding or unusual equities? And the defendant in this case simply did not. Mr. Huerta stated that he had siblings in 1997. There's absolutely no evidence of that in the record. The district court found that there was no record of any family ties in 1997. We know he has family in Minnesota, I believe, now, but we don't know if they were there in 1997, and the defendant was in California in 1997. So there's absolutely no record that he had family ties at the time of his removal proceeding. He did have some sort of employment history, but, again, it's not a stellar employment history. Yes, he must have had some sort of verified employment in order to obtain the agricultural worker visa or admittance into that program, but he was he was he obtained that temporary residence in 1988. After 1988, we don't know what kind of employment he had. And then within four years, he started engaging in criminal activity. And then that would bring us to the length of residence. The defendant entered when he was about 15. He'd been in this country for approximately 14 years. Six of those years he spent engaging in criminal activity. So although he had a lengthy residence, at least a quarter of that time was is marked by his engagement in criminal activity and being incarcerated. Is there a distinction between what would be a plausible case in 1997 and today? There is a distinction, Your Honor, because today the defendant simply has more equities. He does have, I believe, two minor United States citizen children now. And I believe a spouse. So if he were in front of an immigration court today, he might very well have a plausible ground for 212c relief. But in 1997, he simply did not have these equities. And again, he can now show that he has family in Minnesota that he apparently is close to. But those equities simply did not exist in 1997. And the Court has the Court has come up the Court has come across this question in other cases where you're trying to decide the plausible ground, and you need to sort of hone in and focus on the immigration proceeding at the time that it would have occurred, at the time that the defendant would have been gone. And this would have been 1997? Yes, Your Honor. So again, the defendant simply cannot show these outstanding or unusual equities in this case. His length of residence is marked by a significant criminal history. He had he had he simply did not present to the district court any showing of familial ties in 1997. And although he did have some history of employment, it really was not that significant. So we submit that the defendant did not show outstanding or unusual equities. Those equities are necessary in order to be considered for relief in the exercise of discretion. And therefore, the defendant could not prove a plausible ground in this case. And the district court correctly made this, correctly found that in this case. And none of the factual findings by the district court were clearly erroneous. Our standard of review of the district court determination is de novo? The review of the district court's final conclusion is de novo. However, the review of the underlying factual findings is clearly erroneous. Yes, Your Honor. Okay. If there are no more questions. I don't see any. Thank you for your argument. Rebuttal? Mr. Huerta. And, Your Honor, I would not hesitate to tell the court, as Mr. Soltan did in his affidavit, that Mr. León Paz's case would not be the strongest. It doesn't rise to the level of, say, the Ubaldo Figueroa matter that was before the Ninth Circuit. But Mr. Soltan is the expert in this matter. We can talk about what we know about immigration law, what we think about it. But the reality is the person who is really in the best position here was Mr. Soltan because he has worked in the immigration field for so long. The government had the opportunity to bring someone to rebut his information. Thousands of immigration attorneys have worked for the BIA or the Office of Immigration Litigation. They had the ability to ask Mr. Soltan questions. I asked to have Mr. Soltan brought in, and that's in the transcript, to answer a few questions for the court. The court didn't want that. The government didn't ask for it. And Mr. Soltan had to work with the reality that at the time that we filed this, Mr. León Paz, who had been, and this is in the previous court record, had been removed from the U.S. So Mr. Soltan worked off of the record that he had, the information that he had, and he had to make a decision based on the information that he had as to whether or not if he were to represent him in court, he might have a shot at getting Mr. León Paz's green card, excuse me, at having Mr. León Paz retain his green card. And I think looking at his own private practice and the cases that were mentioned, that I've mentioned before with rather harsh, harsh offenses, especially the child molestation case in comparison to Mr. León Paz, I think we have clearly shown that there's a possible case for relief in this matter. One final thing, Your Honor, the immigration court records, as far as I know, are available to the government, as far as I know their public records at this time. Okay. Thank you for your argument. Thanks to both sides for their argument. The case disargued will be submitted for decision. And we'll now proceed to the next case on the argument calendar, which is Henry, the bankruptcy of Arthur Mugler. And this is an adversary proceeding involving Mr. Mugler and Binning. Counsel will come forward, please. Thank you.
judges: Lay, B. Fletcher, Hawkins